UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
REGINA LEWIS,

                               Plaintiff,                              **OPINION & ORDER**

        - against -                                             No. 20-CV-7973 (CS)

CITY OF NEWBURGH, NEWBURGH ARMORY
UNITY CENTER, JOSEPH DONAT – City Manager,
RAMONA MONTEVERDE – City Council,
TORRANCE HARVEY – Mayor,
PATTY SOFOKLES – City Council,
KAREN MEJIA – City Council,
ANTHONY GRICE – City Council,
ROBERT SKLAREZ – City Council,
OMARI SHAKUR – City Council,

                               Defendants.
----------------------------------------------------------------x

<u>Appearances</u>:

Regina Lewis
Newburgh, New York
*Pro Se Plaintiff*

Paul E. Svensson
Hodges Walsh & Burke, LLP
White Plains, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

       Before the Court is the motion to dismiss of Defendants Joseph Donat, Ramona

Monteverde, Torrance Harvey, Patty Sofokles, Karen Mejia, Anthony Grice, Robert Sklarez,

Omari Shakur, (collectively, the "Individual Defendants"), and the City of Newburgh, (ECF No.

26.)  For the following reasons, Defendants' motion is GRANTED.

I.     **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended

Complaint, (ECF No. 24 ("AC")), Initial Complaint, (ECF No. 2 ("IC")), and memorandum in

opposition, (ECF No. 30 ("P's Opp.")).  *See Washington v. Westchester Cnty. Dep't of Corr.*,

No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se*

plaintiff the benefit of considering facts in original complaint even if they have not been repeated

in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1

(S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law,

where they are consistent with those in the complaint, may also be considered on a motion to

dismiss.").[1]

A.     **Facts**

*Pro se* Plaintiff Regina Lewis is the Chief Executive Officer ("CEO") of two legal

entities:  (1) Mothers Against Institutional Negligence ("MAIN"), which has been incorporated

since November 19, 2010; and (2) The Newburgh Enrichment Center ("NEC"), which has been

incorporated since December 10, 2009.  (*See* IC at 2.)  As the CEO of MAIN, Plaintiff advocates

for New York State prisoners who have been wrongfully incarcerated and who experience

"unconstitutional prison conditions."  (*Id.*)  As the CEO of NEC, Plaintiff has proposed "a viable

economic development plan" to assist "at-risk underserved young Black African American

males."  (*Id.*)  Defendant Donat is the City of Newburgh City Manager; Defendant Harvey is the

City of Newburgh Mayor; and Defendants Monteverde, Sofokles, Mejia, Grice, Sklarez and

Shakur are members of the City of Newburgh City Council.  (AC at 1.)

---

[1] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion
and Order.

Plaintiff alleges that, since 2009, she has "made numerous requests for legislative advocacy" to further her organizations.  (IC at 2.)  Plaintiff claims that Defendants have refused "to engage in meaningful communication" with her and have failed to provide funding to either of her organizations "through community constituent services."  (*Id.*)  Specifically, Plaintiff alleges that Defendant Donat, a "high-ranking decision maker," (AC at 1), refused to permit his scheduler to make an appointment with Plaintiff, (IC at 2).  Plaintiff also contends that the Individual Defendants refused to place a meeting with Plaintiff on their agenda.  (*Id.*)  Plaintiff asserts that Defendants, instead, support an organization operating in Westchester County, Rockland, and Yonkers, known as the "Ruff Ryders."  (AC at 1.)  The Ruff Ryders hold themselves out as "caring community driven support groups," but Plaintiff believes the organization "is a front for Federal Agents . . . to infiltrate poor Black Inner Cities and arrest scores of Black Youth" under federal laws.  (*Id.*)  Plaintiff believes that Defendants are focused on providing "incentives to non-African American [individuals] to take up residency in the City of Newburgh, with an incentive of tax abatement and really cheap property and funding."  (IC at 2.)[2]

Plaintiff brings claims pursuant to 42 U.S.C § 1983 and she names the Individual Defendants in both their official and individual capacities.  (AC at 1.)  Specifically, Plaintiff alleges that Defendants Harvey and Donat are liable for failing to meet with her.  (*Id.*; IC at 3-4.)  Further, Plaintiff alleges that Defendants' refusal "to do business" with her constitutes

---

[2] Plaintiff also alleged that New York State Assemblymember Johnathan Jacobson, New York State Senator James Skoufis and U.S. Representative Sean Patrick Maloney denied her legislative assistance and constituent services by informing her that they were unaware of funding or services to further her goals.  (*Id.* at 3.)  On December 3, 2020, then-Chief Judge McMahon dismissed Plaintiff's claims against Jacobson, Skoufis, and Maloney as frivolous on grounds of legislative immunity.  (ECF No. 4.)

discrimination on the basis of her "status as a Minority Business Owner," and on the basis of her race, disability, expression, gender, and class.  (AC at 1; *see* IC at 2.)  Plaintiff also claims that "defendants have violated [her] first amendment right to pursue happiness," and have thus deprived her of her constitutional rights and privileges under 18 U.S.C. § 242.  (AC at 2.)  Finally, Plaintiff asserts that Defendant Newburgh Armory Unity Center infringed on her intellectual property by implementing a "Drone project" that she had proposed to Defendants. (*Id.* at 1.)

  **B.**  <u>**Procedural History**</u>

  On September 25, 2020, Plaintiff filed this action against City of Newburgh, Joseph Donat, Sean Patrick Maloney, James Skoufis, and Johnathan Jacobson.  (ECF No. 2.)  After the claims against Maloney, Jacobson, and Skoufis were dismissed, (*see* note 2 above), the U.S. Marshals Service served the remaining Defendants, (ECF Nos. 14-15).  In December 2020, the case was reassigned to Judge Katherine Polk Failla and then to me.

  On January 11, 2021, pursuant to my Individual Practices, Defendants filed a pre-motion letter requesting that the Court either schedule a pre-motion conference in anticipation of their motion to dismiss or direct Plaintiff to amend her Complaint.  (ECF No. 11.)  That same day, Defendants' request was mailed to Plaintiff.  (ECF No. 12.)  The Court granted Defendants' letter motion for conference, scheduled a telephonic conference for February 11 at 2:30 p.m., and directed Plaintiff to respond to Defendants' letter by February 4.  (ECF No. 13.)  A copy of that Order was mailed to Plaintiff on January 11.  (Docket Entry dated Jan. 11, 2021.)  The Court did not consult either side when setting the date and time for the conference.

  On January 20, 2021, Plaintiff filed a document titled, "Motion for Pretrial Conference Pursuant to Rule 16," in which she recognized that there was an upcoming conference on

February 11. (ECF No. 16 at 2.)  The document also appeared to be a response to Defendants'
pre-motion letter.  (*Id.* at 1-5.)  In response to Plaintiff's submission, in which she suggested that
Defendants were in default because they had not answered, (*id.* at 2), the Court on January 21
issued an endorsement explaining that:  1) under its Individual Practices, the request for a pre-
motion conference stayed the time to answer and thus that Defendants were not in default; and 2)
next steps would be discussed at the February 11 conference, (ECF No. 17 at 2).  This
endorsement was mailed to Plaintiff on January 22.  (Docket Entry dated Jan. 22, 2021.)

On February 8, 2021 Plaintiff emailed my Courtroom Deputy – as she had done several
times even after being informed that emailing correspondence does not constitute filing it –
requesting a postponement of the conference and enclosing an affidavit seeking my recusal.  In
her affidavit, Plaintiff complained about alleged *ex parte* communications between the Court and
Defendants.  But Plaintiff was the only party in this action who was engaging in *ex parte*
communication, as she contacted the Court by email without copying Defendants, and had
separately left a substantive phone message for the Court.  The Court received a hard copy of
Plaintiff's affidavit in the mail on February 10, but it was never properly filed.

The Court held the scheduled pre-motion conference on February 11, 2021.  Plaintiff did
not appear, but I issued a ruling declining to recuse myself.  (*See* Minute Entry dated Feb. 11,
2021.)  I also rescheduled the pre-motion conference for February 24, 2021, (ECF No. 19), and a
copy of the rescheduling order was mailed to Plaintiff on February 12, (Docket Entry dated Feb.
12, 2021).

The Court held the scheduled pre-motion conference on February 24, 2021, but Plaintiff
again did not appear.  (*See* Minute Entry dated Feb. 24, 2021.)  In my Order dated February 24,
2021, I noted that I would have dismissed Plaintiff's case because of abusive messages she had

communicated to the Court, her violation of my order that she not call chambers, or her failure to

prosecute – but for the possibility that Plaintiff is incompetent.  (*See* ECF No. 21.)  Instead, I

raised the question of Plaintiff's competency *sua sponte*.  (*Id.*)

The Court held a competency hearing and pre-motion conference on March 18, 2021.

(*See* ECF No. 37.)  For the reasons stated on the record, I found Plaintiff competent to proceed.

(*Id.* at 31-34.)  I also granted Plaintiff leave to amend her Complaint to clarify the nature and

basis of her claims against Defendant Donat and the City.  (*Id.* at 34-35, 38-40.)

Plaintiff filed her Amended Complaint on March 25, 2021, adding additional defendants,

(AC), which the Court had not granted permission to do.  On April 29, Defendants filed the

instant motion.  (ECF No. 26.)  Plaintiff filed a letter on May 6, (P's Opp.), which I construe as

Plaintiff's opposition.[3]  Defendants filed their reply on May 12.  (ECF No. 32 ("Ds' Reply").)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

---

[3] On May 7, and again on May 12, Plaintiff sent a letter to the Court "enclosing two letters" that she "intend[s] to . . . use as evidence of discrimination and slander against the defendants."  (ECF Nos. 31, 34.)  I construe the May 7/May 12 letter as part of Plaintiff's opposition.  The two enclosed letters are from Plaintiff and are addressed to staff members of Senator Skoufis.  One has nothing whatsoever to do with Defendants.  The other includes what Plaintiff represents to be the staff member's account of her unsuccessful effort to get Plaintiff on the City Council's agenda.

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, No. 20-2756, 2021 WL 5406437, at *10 (2d Cir. Nov. 19, 2021) (cleaned up).

B.    *Pro Se* **Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

III.    **DISCUSSION**

As an initial matter, Plaintiff's claims against the Individual Defendants in their official capacities are duplicative of Plaintiff's *Monell* claim against the City of Newburgh.  *See Alvarado v. Westchester County*, 22 F. Supp. 3d 208, 213 (S.D.N.Y. Apr. 24, 2014) ("Based upon the understanding that it is duplicative to name both the government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources.") (cleaned up); *Conte v. County of Nassau*, No. 06-CV-4746, 2008 WL 905879, at *1 n.2 (E.D.N.Y. Mar. 31, 2008) ("[W]ith regard to the individual defendants sued in their official capacities, these claims are duplicative of the municipal liability claim lodged against the County and the City under *Monell* . . . .").  Accordingly, the claims against the Individual Defendants in their official capacities are dismissed.

A.     <u>**Civil Claims Pursuant to 42 U.S.C. § 1983**</u>

Title 42, United States Code, Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must plausibly allege that the defendant (1) deprived the plaintiff of rights secured by the Constitution and laws of the United States, (2) while acting under color of state law.  *Id.*  In addition, a plaintiff must allege the individual defendant's personal involvement in the alleged constitutional deprivation.  *See, e.g.*, *Grullon v. City of New Haven*, 720 F.3d 133, 137-38 (2d Cir. 2013); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).  A defendant may not be held liable under § 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights.  *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").  Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official."  *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing that Defendants Monteverde, Sofokles, Mejia, Grice, Sklarez, or Shakur were personally involved in violating her constitutional rights. Plaintiff merely alleges – in a conclusory fashion – that these Defendants implemented "a policy or custom of discrimination based on [Plaintiff's] disability, expression, and [] status as a Minority Business Owner since 2009."  (AC at 1.)  I therefore dismiss the claims against

9

Defendants Monteverde, Sofokles, Mejia, Grice, Sklarez, and Shakur.[4]  And, these claims would be dismissed for failure to state a claim in any event, as discussed below.

### 1.    Fourteenth Amendment

Plaintiff alleges that the "City of Newburgh under various leadership" discriminated against her on the basis of her status as a minority business owner, as well as on the basis of her race, disability, gender, class and expression, (*id.*; IC at 2), by "refus[ing] to put [Plaintiff's] proposed business on the [City's] agenda and refus[ing] to do business with [her]," instead agreeing to support the Ruff Ryders, (AC at 1).

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To establish an equal protection claim, a plaintiff "must show both that [s]he was treated differently than other persons who were similarly situated and that such differential treatment was either without rational basis (a 'class of one' claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)."  *Casciani v. Nesbitt*, 392 F. App'x 887, 888 (2d Cir. 2010) (summary order).  Here, Plaintiff arguably alleges both.

A plaintiff states a valid "class of one" equal protection claim when (1) "she has been intentionally treated differently from others similarly situated," and (2) "there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiffs must show "an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  *Sacher v. Village of Old Brookville*, 967 F. Supp. 2d 663, 670 (E.D.N.Y. 2013) (cleaned up).  The comparators' circumstances must be "*prima facie*

---

[4] Further, Plaintiff never obtained leave to add these individuals as Defendants.

identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (cleaned up), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (*per curiam*).

To make out a claim for selective enforcement, a plaintiff must "show both (1) that [she was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (cleaned up). The comparators must be similarly situated in all material respects, a "slightly more relaxed standard" than for class of one claims. *Joglo Realties, Inc. v. Seggos*, No. 16-CV-1666, 2016 WL 4491409, at *9 (E.D.N.Y. Aug. 24, 2016). The discrimination must be intentional or purposeful. *LeClair v. Saunders*, 627 F.2d 606, 609 (2d Cir. 1980).

Plaintiff makes no effort under either theory to identify sufficiently similar comparators who were treated more favorably. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 790-91 (2d Cir. 2007) (identification of similarly situated individuals treated differently required for selective enforcement theory); *Witt v. Village of Mamaroneck*, 992 F. Supp. 2d 350, 363 (S.D.N.Y. 2014) (similar for class of one theory). Plaintiff does not allege that she presented a proposal similar to the one presented by the Ruff Ryders or any of the other entities she lists in her opposition. And Plaintiff provides no facts about the comparators from which I could infer that they were similarly situated to Plaintiff. Merely labeling entities "similarly situated" does not make them so.[5] *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2021 WL

---

[5] Plaintiff argues that she has "evidence of several similarly situated entities being supported by the defendants" and lists "Blacc Vanilla, Ruff Ryders, Land Bank, Community Voices Heard, Newburgh LGBTQ Center, the Mayors association and affiliation with We Are Newburgh etc." (P's Opp. at 2.) But she provides no facts about any of these organizations.

4434935, at *27 (S.D.N.Y. Sept. 23, 2021) ("But although [Plaintiff] states that his comparators are 'similarly situated in all material respects,' beyond this conclusory parroting of that legal standard, he does not allege any facts about their conduct or work performance"); *see Twombly*, 550 U.S. at 555 (plaintiff's obligation to provide grounds of entitlement to relief "requires more than labels and conclusions") (cleaned up).

Plaintiff has not only failed to demonstrate differential treatment, but she has also not plausibly alleged that any such treatment was based on her race, disability, gender, class, status, exercise of constitutional rights or malice or bad faith intent to injure.[6]  To state a claim of race-based discrimination under Section 1983, plaintiffs must allege facts showing that defendants intended to discriminate against them on the basis of race.  *Ross v. New Canaan Env't Comm'n*, 532 F. App'x 12, 13 (2d Cir. 2013) (summary order) ("To state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.")  Plaintiff, however, does not allege facts suggesting that her race[7] played any role in Defendants' decision-making about the City's

---

[6] I focus on Plaintiff's race-based discrimination allegations in this section and her disability-based and "expression"-based discrimination claims in the next sections.  *See Hadley v. City of N.Y.*, No. 15-CV-8231, 2017 WL 6729290, at *3 (S.D.N.Y. Oct. 4, 2017) ("Freedom from discrimination on the basis of disability is a right secured by the ADA, not the constitution.") (cleaned up); *Gentile v. Nulty*, 769 F. Supp. 2d 573, 582 (S.D.N.Y. 2011) ("When a plaintiff's equal protection claims are based on alleged First Amendment violations, the former coalesce with the latter.") (cleaned up).  Plaintiff alleged that she was discriminated against based on her "gender" and "class" in her IC, (IC at 2), but does not allege any facts related to these claims in her AC, and acknowledges in her opposition that "the amended complaint replaces the old one," (P's Opp. at 1.)  Even if she had pursued gender and "class" claims, they would fail for the same reasons as the race claims.

[7] Plaintiff also alleges that she has been discriminated against based on her "status as a Minority Business Owner."  (AC at 1.)  But Plaintiff provides no facts rendering that conclusion plausible.  Plaintiff does not provide facts about the makeup of the ownership of the allegedly similarly situated entities, (*see* P's Opp. at 2), or, as Defendants point out, even "allege that the Ruff Ryders to the Rescue Foundation is not a minority owned business," (ECF No. 28 ("Ds' Mem.")) at 23).

allocation of resources, scheduling meetings with constituents, or adding constituents' business proposals to meeting agendas.  In short, Plaintiff's allegations are devoid of facts indicating that Defendants ever considered or took any action based on her race.  *See Brisbane v. Milano*, 443 F. App'x 593, 595 (2d Cir. 2011) (dismissing equal protection claim where plaintiffs merely alleged that "they are black, and that [allegedly similarly situated individuals] are white" and provided police reports "describ[ing] [individuals] by their race and sex"); *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006) (cleaned up) (conclusory allegations of discrimination "without evidentiary support or allegations of particularized incidents [do] not state a valid claim and so cannot withstand a motion to dismiss"); *Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race.  This is not sufficient."); *Turner v. Nazareth Coll.*, No. 10-CV-6357, 2011 WL 310787, at *5 (W.D.N.Y. Jan. 28, 2011) (claim fails because plaintiff did not "allege facts to support her claim that the conduct occurred *because of her race*") (emphasis in original); *Jarrach v. Sanger*, No. 08-CV-2807, 2010 WL 2400110, at *8 (E.D.N.Y. June 9, 2010) ("Conclusory allegations of selective treatment are insufficient to state an equal protection claim."); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 462 (W.D.N.Y. 2008) ("Conclusory allegations of disparate treatment or plaintiff's personal belief of discriminatory intent is insufficient.") (cleaned up).[8]

---

[8] To the extent Plaintiff seeks to bring a due process claim, Plaintiff does not have a federally protected interest in meeting with the City Manager or the City Council to advocate for herself or her nonprofits, or to obtain government funds for proposed projects.  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire" and "more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Such entitlements are, "not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Paul v. Davis*, 424 U.S. 693, 709 (1976) (cleaned up).  Plaintiff has not pointed to

The Equal Protection claim is therefore dismissed.

## 2.    Americans with Disabilities Act and Rehabilitation Act

Plaintiff invokes the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), seeking to assert a disability-based discrimination claim.

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Section 504 of the RA similarly states that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  To state a claim for discrimination under either the ADA or the RA, a plaintiff must plausibly allege that (1) she is a "qualified individual with a disability;" (2) she was "excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by the public entity;" and (3) "such exclusion or discrimination was due to [her] disability." *B.C. v. Mount Vernon Sch. Dist.*, 837 F.3d 152, 158 (2d Cir. 2016) (cleaned up).[9]  Both Title II and

---

any source that would entitle her to meet with government officials, obtain their assistance or receive government funding.

[9] "As the standards for actions under . . . the ADA and the [RA] are generally equivalent, [courts in this Circuit] analyze such claims together." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015); *see Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999) (assessing ADA and Section 504 claims together); *Scruggs v. Meriden Bd. of Educ.*, No. 03-CV-2224, 2007 WL 2318851, at *16 (D. Conn. Aug. 10, 2007) (same).  The primary difference between the two statutes is that the RA requires the plaintiff to plead that the defendant receives federal funding, and the ADA does not.  Defendants do not challenge that the City of Newburgh receives such funding, (*see* Ds' Mem. at 21), so the two statutes are appropriately analyzed together here.

§ 504 are to be construed broadly to effectuate the remedial nature of the statutes.  *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 279 (2d Cir. 2003).

A person is disabled under the ADA if the person has "a physical or mental impairment that substantially limits one or more major life activities"; "a record of such an impairment"; or is "regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).  Here, Plaintiff fails to set forth any facts suggesting that she has or is perceived to have a disability within the meaning of the ADA.  *See* 42 U.S.C. § 12102.[10]

Assuming that Plaintiff has a disability within the meaning of the ADA, Plaintiff alleges no facts suggesting that any of the Defendants had notice of her alleged disability or that any Defendant subjected her to disability-based discrimination.  "There can be no action for violation of the ADA without an allegation that the complained of deprivation was a result of the plaintiff's disability."  *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 277-78 (E.D.N.Y. 2005) (cleaned up).[11]  As with her race claim, Plaintiff seems to ask the Court to

---

[10] In Plaintiff's opposition, Plaintiff refers to "neck and shoulder injuries" that make it difficult for her to sit at a computer for long periods of time.  But Plaintiff does not allege that Defendants discriminated against her based on these ailments.  Plaintiff also mentioned that she suffers from Post Traumatic Stress Disorder ("PTSD") at the pre-motion conference, (ECF No. 37 at 21-22), and in one of her letters, (*see* ECF No. 25 at 1).  But Plaintiff raised PTSD in the context of explaining her behavior toward the Court and court staff and does not mention it, or any other disability, in the IC or AC.

[11] Further, Plaintiff did not respond to Defendants' argument that because she did not file a complaint with the Equal Employment Opportunity Commission, she failed to exhaust administrative remedies as required.  (Ds' Mem. at 20.)  A court "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004).  In light of Plaintiff's *pro se* status, however, the Court will not deem the ADA/RA claim to be abandoned.  *See Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 61 n.9 (S.D.N.Y. 2019).  On the merits, however, it is subject to dismissal for failure to exhaust.  *See Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004); *Manello v. Nationwide Mut. Ins. Co.*, No. 11-CV-243, 2012 WL 3861236, at *8 (E.D.N.Y. Sept. 4, 2012).

15

assume that Defendants acted against her on the basis of disability, without providing any specifics that would enable the Court to draw such an inference.

The Court therefore dismisses Plaintiff's claims under the ADA and the RA.

### 3.    First Amendment

The Court interprets Plaintiff's allegation that she was discriminated against based on her expression to be a First Amendment retaliation claim.  In the Second Circuit, the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court.  *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  In the context of a private citizen's action against public officials, the plaintiff must show that:  "(1) [plaintiff] has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [plaintiff's] First Amendment right," *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), or caused plaintiff to suffer some other concrete harm, *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (*per curiam*).   Even assuming that Plaintiff's speech – advocating for her business – is constitutionally protected speech, which Defendants argue it is not, (Ds' Mem. at 18-19; Ds' Reply at 10), Plaintiff's claim fails because Plaintiff has not alleged a chilling effect or other concrete harm.[12]  Nor has she plausibly alleged that Defendants' refusal to meet with her or fund her projects was a reaction to the content of her advocacy.

Further, to the extent Plaintiff intends to allege a violation of her right to petition government for redress of grievances, the claim fails because that right does not carry with it a

---

[12] As Defendants note, "Plaintiff has not alleged that she cannot submit business proposals to the City," (Ds' Reply at 8), and Plaintiff "continued to submit proposals via email and letter to the City," (*id.* at 11.)

right to have government officials listen to or respond to any such petition. *See Futia v. Westchester Cnty. Bd. of Legislators*, No. 20-CV-1237, 2020 WL 4570494, at *6 (S.D.N.Y. Aug. 6, 2020) (collecting cases), *aff'd*, 852 F. App'x 30 (2d Cir. 2021), *cert. denied*, No. 21-450, 2021 WL 5763112 (U.S. Dec. 6, 2021). Nor does the right to petition include the right to communicate with the government in any way the plaintiff wishes; it is not violated where an individual can communicate in writing even if she cannot be heard in person. *See Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 206 (D. Conn. 2005) (collecting cases).[13]

Thus, Plaintiff's First Amendment claims fail.

### 4.   *Monell*

Plaintiff alleges that the City of Newburgh has implemented "a policy or custom of discrimination" against her. (AC at 1.)

"Under Second Circuit case law, . . . a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009). Because "[P]laintiff lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well." *Lener v. Hempstead Pub. Schs.*, 55 F. Supp. 3d 267, 283 n.14 (E.D.N.Y. 2014) (citing *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006)); *see Claudio*, 675 F. Supp. 2d at 408-09 ("Once a district court properly finds no underlying constitutional violation, its decision not to address the municipal defendant's liability under *Monell* is entirely correct") (cleaned up).

---

[13] Plaintiff also claims that Defendants violated her "[F]irst [A]mendment right to pursue happiness." (AC at 2.) The "pursuit of happiness" comes from the preamble to the Declaration of Independence. There is no standalone constitutional right to the pursuit of happiness. *Nguyen v. Bank of Am.*, No. 14-CV-1243, 2015 WL 58602, at *3 (E.D.N.Y. Jan. 5, 2015); *Coffey v. United States*, 939 F. Supp. 185, 190-91 (E.D.N.Y. 1996).

**B.**    **Criminal Claim Pursuant to 18 U.S.C. § 242**

Plaintiff alleges that Defendants violated 18 U.S.C. § 242 – a criminal statute punishing

the deprivation of civil rights under color of law.  As a general matter, "crimes are prosecuted by

the government, not by private parties."  *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006)

(summary order).  Where Congress has not explicitly provided for a private right of action under

a criminal statute, the Supreme Court has rarely implied one.  *Chrysler Corp. v. Brown*, 441 U.S.

281, 316 (1979).  Plaintiff cannot bring a claim under the criminal statute she cites because it

does not provide for a private right of action.  *See Robinson v. Overseas Mil. Sales Corp.*, 21

F.3d 502, 511 (2d Cir. 1994) (§ 242 is criminal statute that does not provide private right of

action); *Bender v. Gen. Servs. Admin.*, No. 05-CV-6459, 2006 WL 988241, at *1 (S.D.N.Y. Apr.

14, 2006) (same).

**C.**    **Other Claims**

To the extent Plaintiff purports to assert additional claims not discussed above, the Court

finds the pleadings to be not only inadequate to survive Rule 12(b)(6) but also frivolous.  Among

other grievances, Plaintiff incorporates into her complaint a claim that Defendants infringed on

her intellectual property when the Newburgh Armory Unity Center paid $10,000 to

DRONETECHUSA to implement Plaintiff's proposed "Drone project."  (AC at 1.)  She provides

no facts describing the intellectual property at issue or the allegedly infringing activity.

To establish a copyright infringement claim, "a plaintiff with a valid copyright must

demonstrate that:  (1) the defendant has actually copied the plaintiff's work; and (2) the copying

is illegal because a substantial similarity exists between the defendant's work and the protectible

elements of plaintiff's."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63

(2d Cir. 2010).  A similar showing must be made for trademark or patent claims.  *See 1-800*

*Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005) (trademark

infringement); *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, No. 16-CV-885, 2017 WL

74729, at *3 (S.D.N.Y. Jan. 4, 2017) (patent infringement).  As a threshold matter, Plaintiff does

not provide sufficient facts to support that she has a valid copyright, trademark or patent.

Further, as Defendants note, (Ds' Mem. at 26), drone technology is a commercially available

product and is thus not Plaintiff's intellectual property.  Nor does she provide facts as to what

any Defendant did that might have constituted infringement of any such property.  Plaintiff has

not plausibly alleged that anybody infringed on any protected intellectual property belonging to

her.[14]  Accordingly, to the extent Plaintiff intended to bring claims of copyright infringement or

related claims, they are dismissed.[15]

    **D.**    **Leave to Amend**

    Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up).  "Leave to amend, though

liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by

amendments previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v.

City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182

(1962)).

---

[14] The claims against the Newburgh Armory Unity Center are dismissed *sua sponte* both because Plaintiff did not obtain leave to amend to include that entity as a defendant, and because they are frivolous.  28 U.S.C. § 1915(e)(2).  If Plaintiff were in possession of facts plausibly suggesting wrongdoing by that entity, she would have to commence a new lawsuit.

[15] Based on this disposition, the Court need not address Defendants' arguments regarding legislative immunity and qualified immunity.

Plaintiff already had the chance to amend her complaint, after having the benefit of Defendants' pre-motion letter and the Court's comments at the pre-motion conference.  (*See* ECF No. 37 at 35, 38-40.)  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Further, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in

dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend).  Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the pending motion, (ECF No. 26), send a copy of this Opinion and Order to Plaintiff, and close the case.

**SO ORDERED.**

Dated:  December 20, 2021
          White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.